NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4135-15T1

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

JIHAD BASSIT, a/k/a JIHAD
BAASIT,

 Defendant-Appellant.

___________________________________

 Submitted September 13, 2017 – Decided October 5, 2017

 Before Judges Fuentes and Manahan.

 On appeal from Superior Court of New Jersey,
 Law Division, Essex County, Indictment No. 08-
 10-3194.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Adam W. Toraya, Designated
 Counsel, of counsel and on the brief.

 Robert D. Laurino, Acting Essex County
 Prosecutor, attorney for respondent (Stephen
 A. Pogany, Special Deputy Attorney
 General/Acting Assistant Prosecutor, on the
 brief).

PER CURIAM
 Defendant Jihad Bassit appeals from the order of the Criminal

Part denying his post-conviction relief (PCR) petition. We affirm.

 An Essex County Grand Jury returned a five-count indictment

against defendant charging him with murder, N.J.S.A. 2C:11-3a(1)

and (2), first degree attempted murder, N.J.S.A. 2C:5-1 and

N.J.S.A. 2C:11-3, second degree unlawful possession of a handgun,

N.J.S.A. 2C:39-5b, and second degree possession of a weapon for

an unlawful purpose, N.J.S.A. 2C:39-4a. Defendant was also charged

in an Accusation with first degree conspiracy to commit murder,

N.J.S.A. 2C:5-2 and N.J.S.A. 2C:11-3a(1) and (2).

 On June 9, 2010, defendant entered into a negotiated agreement

with the State through which he pleaded guilty to first degree

aggravated manslaughter, N.J.S.A. 2C:11-4, as a lesser included

offense of murder, second degree aggravated assault, N.J.S.A.

2C:12-1b, as a lesser included offense of attempted murder, second

degree possession of a handgun for an unlawful purpose, and first

degree conspiracy to commit murder. In return, the State agreed

to recommend that defendant be sentenced to an aggregate term of

twenty years, with an eighty-five percent period of parole

ineligibility and five years of parole supervision under the No

Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

 At the plea hearing, the judge questioned defendant directly

to confirm he was aware of and understood the terms of the plea

 2 A-4135-15T1
agreement. The judge found defendant had been apprised of his

constitutional rights to stand for trial on these charges and had

voluntarily agreed to waive those rights as part of the plea

agreement. The judge also confirmed that defendant had sufficient

time to discuss this matter with his attorney and was satisfied

with his services.

 On November 1, 2010, defendant moved to withdraw his guilty

plea. Defense counsel represented to the trial judge that

defendant's motion was predicated on his assertion of innocence.

Counsel explained that defendant believed that "my advice" in

persuading him to plead guilty was "inappropriate wisdom[.]"

Defendant "feels on reflection . . . that in following my advice

he made a mistake and he wishes now to withdraw his plea[.]" After

considering the arguments from both defense counsel and the

prosecutor, the judge applied the factors the Supreme Court

established in State v. Slater, 198 N.J. 145 (2009) and denied

defendant's motion. The judge thereafter sentenced defendant

consistent with the terms of the plea agreement. Defendant

appealed the sentence imposed by the court pursuant to the summary

review process in Rule 2:9-11. We affirmed. State v. Jihad

Bassit, Docket No. A-4218-10 (App. Div. August 31, 2011).

 On August 9, 2012, defendant filed a pro se PCR petition

alleging ineffective assistance of trial counsel. The trial court

 3 A-4135-15T1
assigned PCR counsel to represent defendant in this endeavor. With

the assistance of PCR counsel, defendant submitted a supplemental

certification in which he alleged that "several days" after he

pled guilty, he received a letter from codefendant Tourie Moses.

Moses allegedly admitted in this letter that he had given a "false

statement" against defendant to the police "hoping that lying

against [defendant] would benefit him in resolving his own homicide

arrest." Defendant claimed he filed a pro se motion to withdraw

his guilty plea the day after he received Moses' letter.

 Defendant alleged in this certification that his attorney

came to see him at the jail after he learned from the prosecutor

of defendant's efforts to withdraw the guilty plea. According to

defendant, trial counsel discouraged him from withdrawing his

guilty plea.

 My attorney expressed that the guilty plea was
 still my best option given the situation that
 I was in.

 . . . .

 While I knew all of the discovery documents
 that I had reviewed over some time about the
 alleged facts of the first case to come up
 with a false factual basis, my attorney,
 despite my assertions of innocence, told me
 what to say regarding the Accusation on the
 second case.

 While prior to the plea withdrawal Motion I
 had requested that my attorney speak with
 Tourrie Moses regarding the letter that I had

 4 A-4135-15T1
 received exonerating me from writing the
 alleged incriminating letter in Mr. Moses’
 possession at the time of his arrest, to my
 knowledge my attorney never met with Mr. Moses
 or his attorney.

 The PCR record also included a copy of Moses' exculpatory

letter and a certification by Moses in which he, in part, averred:

 I had a letter that had incrimination words
 in it that I don't know who sent to me, in
 certainty I can say it wasn't from
 [defendant]. I stated it was from him upon
 being interviewed by Irvington detectives
 because they said they knew it [came] from
 him, so I went along and composed lies
 accordingly hoping it would benefit me,
 evidently I was involved in a murder I later
 confessed to. I knew nothing about his case,
 I did not know a witness, to my knowledge it’s
 a female, but I went to kill a rival gang
 member I had numerous disputes with.

 I hope it's not too late to straighten out
 what I did[.] In honesty I acted alone. He
 had nothing to do with my case.

 On April 12, 2013, the PCR judge heard oral argument on

defendant's petition. After considering the arguments presented

by counsel, the judge denied defendant’s petition in an order

entered on April 16, 2013. The judge explained the basis of his

ruling in a written decision attached to the order. Defendant

appealed to this court arguing, in part, that the PCR judge erred

in denying the petition without conducting an evidentiary hearing.

After reviewing the record developed before the PCR judge, we

affirmed the denial of PCR with respect to defendant’s guilty plea

 5 A-4135-15T1
to charges related to the indictment. With respect to defendant's

guilty plea to the charge in the Accusation of first degree

conspiracy to commit murder, we concluded:

 In this case, there are significant questions
 of fact that can be resolved by an evidentiary
 hearing in which the trial court can assess
 the credibility of witnesses. Those
 questions include: whether defendant did
 receive a letter from Moses prior to his
 sentencing; the contents of any letter
 received; the full extent of communications
 between defendant and his attorney regarding
 the motion to withdraw the plea, including
 whether he provided the letter to his
 attorney, what information defendant provided
 to his attorney about the letter and Moses;
 and defense counsel's reasons for failing to
 contact Moses or use the letter in support of
 defendant’s motion.

 [State v. Jihad Bassit, Docket No. A-40-13
 (App. Div. August 4, 2015), slip op. at 14-
 15.] .

 We therefore remanded the matter for the PCR court to conduct

an evidentiary hearing limited to defendant's claim of ineffective

of counsel in connection with the charge in the Accusation of

first degree conspiracy to commit murder.

 On December 4, 2015, the PCR judge adhered to our instructions

and conducted an evidentiary hearing. Defendant's trial counsel,

Touriee Moses, and defendant testified at the hearing. The State

did not call any witnesses. When asked directly whether he

received a letter from Moses concerning the charge in the

 6 A-4135-15T1
Accusation, trial counsel responded: "I don’t recall it. I don’t

recall a letter from co-defendant, Mr. Moses, . . . being provided

to me." Trial counsel stated that if such a letter had been given

to him at the time, he would have made an effort to include it in

support of defendant’s motion to withdraw his guilty plea. Trial

counsel emphasized that any document attesting to defendant's

innocence addresses directly one of the key factors under Slater.1

He also testified that he would have spoken to Moses’ attorney to

get his "permission to talk to Mr. Moses."

 Defendant and Moses both testified in sharp contrast to

defense counsel's testimony. In the process, however, they both

provided highly incriminating evidence about their membership in

the "crips," a notoriously violent gang. Defendant claimed he

sent the alleged letter to defense counsel by regular mail while

he was held in either the Bergen County Jail or the Essex County

1
 In Slater, the Supreme Court held

 trial judges are to consider and balance four
 factors in evaluating motions to withdraw a
 guilty plea: (1) whether the defendant has
 asserted a colorable claim of innocence; (2)
 the nature and strength of defendant's reasons
 for withdrawal; (3) the existence of a plea
 bargain; and (4) whether withdrawal would
 result in unfair prejudice to the State or
 unfair advantage to the accused.

 [Slater, supra, 198 N.J. 158-59]

 7 A-4135-15T1
Correction facility. He did not keep a copy of the letter. Moses

identified defendant as his co-conspirator when he pled guilty to

first degree conspiracy to commit murder.

 In assessing the credibility of the witnesses who testified

at the evidentiary hearing, the PCR judge noted he presided over

the plea hearings of both defendant and Moses and sentenced both

men in accordance with their respective plea agreements. Against

this backdrop, the PCR judge made the following factual findings.

 I have concluded that [defense counsel's]
 remarks under oath are wholly credible versus
 the testimony of Bassit and Moses, which are
 patently unbelievable and false. Bottomed on
 the evidence presented, the court finds,
 parenthetically, that the mystery Moses letter
 exculpating Bassit never existed. Further the
 avouchment that a letter of exculpation was
 made available to defense counsel, which was
 vehemently disputed by [defense counsel], and
 the facts and testimony developed on the issue
 clearly indicate that such a claim is a
 complete and utter fabrication.

The judge ultimately concluded that defendant had not established

a prima facie case of ineffective assistance of trial counsel and

denied the petition.

 Against this record, defendant now appeals raising the

following argument.

 POINT ONE

 THE PCR COURT'S ORDER SHOULD BE REVERSED AND
 THE MATTER REMANDED TO THE TRIAL COURT TO
 ALLOW THE DEFENDANT TO VACATE HIS GUILTY PLEA

 8 A-4135-15T1
 BECAUSE THE PCR COURT ERRED IN DETERMINING
 THAT DEFENDANT DID NOT MEET HIS BURDEN UNDER
 THE STRICKLAND STANDARD OF INEFFECTIVE
 ASSISTANCE OF COUNSEL.

 A PCR petition is our State's analogue to the federal writ

of habeas corpus. See State v. Afanador, 151 N.J. 41, 49 (1997).

As our Supreme Court has recently reaffirmed:

 To prevail on a claim of ineffective
 assistance of counsel, a defendant must
 satisfy the familiar two-prong test outlined
 in Strickland v. Washington, 466 U.S. 668,
 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674,
 693 (1984), and adopted by this Court in State
 v. Fritz, 105 N.J. 42, 58 (1987). Defendant
 must show both (1) that counsel's performance
 was deficient, and (2) that the deficient
 performance prejudiced the outcome.
 Strickland, supra, 466 U.S. at 687, 104 S. Ct.
 at 2064, 80 L. Ed. 2d at 693; Fritz, supra,
 105 N.J. at 58.

 [State v. Pierre-Louis, 216 N.J. 577, 579
 (2014)]

 In determining a claim of ineffective assistance of counsel

in a case in which a defendant pled guilty, "the issue is whether

it is ineffective assistance of counsel for counsel to provide

misleading, material information that results in an uninformed

plea, and whether that occurred here." State v. Nunez-Valdez, 200

N.J. 129, 139-40 (2009). Furthermore, we are bound to defer to

the trial court’s factual findings which are substantially

influenced by the judge's opportunity to hear and see the witnesses

and to have the "feel" of the case. State v. Elders, 192 N.J.

 9 A-4135-15T1
224, 244 (2007) (citing State v. Johnson, 42 N.J. 146, 161, 199

A.2d 809 (1964)).

 Mindful of this standard of review, we affirm substantially

for the reasons expressed by the PCR judge in his written opinion

dated March 29, 2016. Defendant has not presented sufficient

credible evidence to warrant PCR.

 Affirmed.

 10 A-4135-15T1